UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY VICINAGE OF NEWARK

**DAMIANO M. FRACASSO,
ATTORNEY AT LAW**
500 INTERNATIONAL DRIVE
SUITE 155
MT. OLIVE, NJ 07828 – 1385
TEL 973.448.1110
FAX 973.529.0306
**dmfesq@fracassolaw.com**
ATTORNEY FOR THE PLAINTIFF

---------------------------------------------X
                            :

MELANIE POLLIS,                  :
                            :

          PLAINTIFF,        :
                            :

VS.,                        :
                            :

BOARD OF CHOSEN FREEHOLDERS  :
OF THE COUNTY OF SUSSEX, STATE  :
OF NEW JERSEY, OFFICE OF THE   :
SUSSEX COUNTY SHERIFF, ROBERT  :
UNTIG, INDIVIDUALLY AND IN HIS  :
OFFICIAL CAPACITY OF SUSSEX    :      CIVIL ACTION NUMBER_____
COUNTY SHERIFF, THE STATE OF    :
NEW JERSEY, CORRECTIONS OFFICER :
ALLISON MURRAY, INDIVIDUALLY   :
AND IN HER OFFICIAL CAPACITY,    :
SGT. RON DUENSKIE, INDIVIDUALLY  :
AND IN HIS OFFICIAL CAPACITY,     :
DAWN VAHALY, LIEUTENANT        :
MANNO, JOHN DOES 1 – 99          :
WHO ARE FICTITIOUS AND          :
PRESENTLY UNKNOWN PERSONS,     :
ENTITIES AND BODIES POLITIC      :
IN THEIR INDIVIDUAL AND OFFICIAL  :
CAPACITIES,                 :
                            :
         DEFENDANTS.      :
---------------------------------------------X

---

**PLAINTIFF'S COMPLAINT & JURY DEMAND**

---

Plaintiff, **MELANIE POLLIS**, by way of this complaint and her undersigned attorney says:

**JURISDICTION AND VENUE**

1)     Plaintiff, **MELANIE POLLIS** seeks redress for violations of her federal civil rights under 42 U.S.C. §§ 1985 and the First, Fifth, Eighth and Fourteenth amendments to the United States Constitution, and to her civil rights under State Law as set out below. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1343 (civil rights jurisdiction); 28 U.S.C. §§ 2201 and 2202 (declaratory relief); and 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims).

2)     This Court has personal jurisdiction over all parties.

3)     Venue is proper in this District pursuant to 28 U.S.C. §1391(b). All events set out below occurred within the District of New Jersey and all parties are residents of the District of New Jersey.

**THE PARTIES**

4)     The Plaintiff, **MELANIE POLLIS**, (hereinafter "Plaintiff"), is a resident of Jefferson Township, New Jersey; and at all relevant times a Citizen of the United States of America; and from April 30, 2007 thru September 28, 2007 was an inmate serving a term of imprisonment at the Keough Dwyer Corrections Facility which imposed by a Court of Competent Jurisdiction. She is not presently serving a term of incarceration.

5)     The **BOARD OF CHOSEN FREEHOLDERS OF COUNTY OF SUSSEX, STATE OF NEW JERSEY**, is a body politic of the State of New Jersey and has offices at the Sussex County Administrative Center, One Spring Street, Newton, New Jersey 07860 ("County of Sussex").

6)      The **OFFICE OF THE SUSSEX COUNTY SHERIFF** has offices at 39 High Street, Newton, New Jersey 07860 ("Sussex Sheriff").

7)      **ROBERT UNTIG**, was at all relevant times the dually elected Sheriff of the County of Sussex, and was at all relevant times charged with administering and overseeing the Sussex County Jail (also know as the Keogh Dwyer Correction Faculty) ("Sussex County Jail"). Robert Untig has offices both in his official and unofficial capacity at 39 High Street, Newton, New Jersey 07860 ("Sheriff Untig").

8)      The **STATE OF NEW JERSEY** has offices at 125 West State Street, Trenton, New Jersey 08625 "New Jersey."

9)      **RON DUENSKIE** (phonetic) was at all relevant times held the rank of sergeant and was employed by the Sussex Sheriff and was under the supervision of Sheriff Untig ("Sgt. Duenskie").

10)     Although Sgt. Duenskie's residence is located within the County of Sussex, State of New Jersey, out of respect for his privacy, the Plaintiff shall plead Sgt. Duenskie's address as that of his place of employment which is 39 High Street, Newton, New Jersey 07860.

11)     **ALLISON MURRAY** (phonetic) was at all relevant times a corrections officer employed by the Sussex Sheriff (badge #13172) and was under the supervision of Sheriff Untig and Sgt. Duenski. ("C/O Murray").

12)     Although C/O Murray's residence is located within the County of Sussex, State of New Jersey, out of respect for her privacy, the Plaintiff shall plead C/O Murray's address as that of her place of employment which is 39 High Street, Newton, New Jersey 07860.

13)     **DAWN VAHALY** at all relevant times was an inmate at the Sussex County Jail who now, upon information and belief resides at 8 Lehigh Street, Franklin (Borough), New Jersey 07416 ("Inmate Vahaly").

14)     At all relevant times, Inmate Vahaly has a known reputation for being physically violent.

15)     **LIEUTENANT MANNO** (Phonetic) was at all relevant times held the rank of Lieutenant and was employed by the Sussex Sheriff and was under the supervision of Sheriff Untig. Lieutenant Manno could be described at all relevant times as approximately 55 years old, 5'10" – 6' – 0" and approximately 350 – 380 pounds and has "salt and pepper hair," donning a primarily black moustache and wearing glasses ("Lt. Manno").

16)     Although Lt. Manno's residence is, upon information and belief, located within the County of Sussex, State of New Jersey, out of respect for his privacy, the Plaintiff shall plead Lt. Manno's address as that of his place of employment which is 39 High Street, Newton, New Jersey 07860.

17)     **JOHN DOES 1 – 99** are fictitious and presently unknown persons, entities and bodies politic who include, but are not limited to all employees, agents, and all those acting in concert with the County of Sussex, Sussex Sheriff, Sheriff Untig, New Jersey, Lt. Manno, Sgt. Duenskie, C/O Murray and Vahaly jointly and severally before, during and after all relevant times set forth in this pleading and as eventual discovery may so indicate.

18)     County of Sussex, Sussex Sheriff, Sheriff Untig, New Jersey and John Does 1 – 99 may from time – to – time be referred to collectively as the "Defendants."

19)     Defendants are the body responsible for the policies and governance of the Sussex County Jail,

## GENERAL FACTUAL BACKGROUND

1)     On or about April 30, 2007, the Plaintiff began serving a custodial sentence of 180 days of incarceration at the Sussex County Jail.

2)     The sentence was imposed following a conviction for a traffic violation.

3)      Prior to on or about April 30, 2007, the Plaintiff had suffered severe injuries to, among other things, her back and neck and was in need of special medical accommodations during her period of incarceration.

4)      At all relevant times, the Defendants and Inmate Vahaly had knowledge of the Plaintiff's medical infirmities and need for special medical accommodations.

5)      On or about May 17, 2007 at or about 8:30 pm in the sally port of the Sussex County Jail the Plaintiff made an inquiry to a Sussex County Jail medical professional into why she had not yet began to receive her prescribed medications as well as all of her other necessary medical accommodations.

6)      C/O Murray was present when the Plaintiff made the said inquiry.

7)      C/O Murray interjected herself into the conversation and in a raised voice stated to the Plaintiff "Write the Undersheriff and tell him to tell the nurses to give you whatever the Fuck you want."

8)      The Plaintiff responded by stating "Do not curse at me" and proceeded back to her tier.

9)      Moments later, C/O Murray summoned the Plaintiff back to the sally port and began yelling and cursing at the Plaintiff and waiving her flashlight in the Plaintiff's face in an intimidating manner.

10)     The Plaintiff asked C/O Murray to refrain from this conduct and C/O Murray responded by stating "I'll do whatever I want to do" and proceeded to use more profane language.

11)     Eventually, the Plaintiff returned to her tier.

12)     Approximately *fifteen* (15) minutes later, the Plaintiff began preparing a written grievance against C/O Murray for her conduct.

13)      C/O Murray overheard the Plaintiff discussing the said grievant with another inmate.

14)      In retaliation and in an attempt to intimidate the Plaintiff from petitioning a government agency for redress, C/O Murray caused the Plaintiff to be subjected to a *four* (4) hour "lock in" and then proceeded to issue two "adjudication reports" against the Plaintiff which alleged a refusal to obey an order of a staff member.

15)      Following a hearing which was held on or about May 24, 2007, the Sussex County Jail Disciplinary Committee determined that it was C/O Murray who provoked the series of events which involved the Plaintiff.

16)      As a result, the Plaintiff's 5 Day disciplinary detention for each of the two charges was "suspended."

17)       Although the Plaintiff did eventually file an administrative grievance against C/O Murray with regard to the events of on or about May 17, 2007, upon information and belief the Defendants never took any steps to make a final determination with regard to same.

18)      In June of 2007, Superior Court Judge James A Farber ordered that one or more of the Defendants must provide the Plaintiff with any and all treatment plans and medications which were recommend and prescribed by the Plaintiff's medical professionals which were necessary to treat her herein described injuries.

19)      Notwithstanding the foregoing, the Defendants still failed to provide the Plaintiff with her court ordered treatment and medication.

20)      On or about June 10, 2007, the Plaintiff made a written request to speak with Undersheriff David Di Marco regarding the Defendants' inactiveness to her special medical needs as well as the Court's order pertaining to same.

21)     On or about June 25, 2007 at or about 5:45 pm Inmate Vahaly entered the Plaintiff's cell uninvited to discuss the evenings' television schedule.

22)     C/O Murray came the Plaintiff's cell and inquired into why Inmate Vahaly was in the Plaintiff's cell.

23)     Despite receiving a valid explanation and an apology from the Plaintiff, C/O Murray "wrote up" both the Plaintiff and Inmate Vahaly with the knowledge and consent of Sgt. Duenskie and as a result of same, both the Plaintiff and Inmate Vahaly were ordered on lockdown until the following morning.

24)     Notwithstanding the foregoing, C/O Murray and Sgt. Duenskie commuted Inmate Vahaly's lockdown status, however the Plaintiff had to serve out every minute of her lockdown status.

25)     When the Plaintiff later learned that Inmate Vahaly's lockdown status was commuted, the Plaintiff requested that C/O Murray provide an explanation for the disparate treatment and that her lockdown status be commuted as well.

26)     C/O Murray provided no such explanation or commutation. This prompted the Plaintiff to pursue her concerns up the "chain of command."

27)     Approximately five minutes later Sgt. Duenskie informed the Plaintiff that her request was denied and that he "stands behind his officer's decisions." This prompted the Plaintiff to request that Sgt. Duenskie assist her in the process of filing a formal administrative grievance against C/O Murray.

28)     Moments later, C/O Murray entered the Plaintiff's cell and proceeded to dispose the Plaintiff's personal property into a garbage can placed in plain view of all inmates.

29)     The Plaintiff was lawfully entitled to possess the said personal property in her cell which included, but was not limited to over the counter medication and items purchased from the commissary.

30)     C/O Murray experienced great personal pleasure from engaging in this behavior.

31)     This conversion of personal property was followed by a command from Officer Murray that the Plaintiff remove all of her remaining personal property from the cell's top bunk.

32)     The Plaintiff had received prior permission to keep personal property on the cell's (unassigned) top bunk due to her medical limitations pertaining to bending and lifting.

33)     The Plaintiff explained her special circumstances to C/O Murray, but she nevertheless commanded the Plaintiff to remove her items from the top bunk and place them in a container under her bed.

34)     The Plaintiff again sought the assistance of Sgt. Duenskie who reinforced C/O Murray's commands.

35)     The Plaintiff eventually complied with the commands of C/O Murray and Sgt. Duenskie and while in the process of doing so experienced great pain in her back, neck and shoulder due to the bending involved in the process.

36)     On the evening of June 25, 2007 prepared and caused to be filed an administrative grievance against C/O Murray based on the aforementioned events.

37)     Or about June 27, 2007, the Sussex Sheriff attempted to remedy the Plaintiff's administrative grievance by replacing some, but not all of the items thrown out by C/O Murray and permitted her to resume storing her personal property on her cell's top bunk.

38)     Furthermore, the Sussex Sheriff ordered a floor wide cell inspection to seek and acquire the same and / or similar items which C/O Murray deemed contraband and belonged to other inmates and dispose of them.

39)     C/O Murray and another corrections officer were assigned this task.

40)     During her execution of this order, C/O Murray told the other inmates that they had the Plaintiff to thank for the cell inspection and the disposal of certain personal items.

41)     Despite having her cell inspected by C/O Murray and that cell containing the same and / or similar contraband which other inmates had disposed of during the floor wide inspection, C/O Murray permitted Inmate Vahaly to keep much of her contraband.

42)     Moments after the floor wide cell inspections, Inmate Vahaly publicly flaunted her use and possession of the said contraband which she was permitted by C/O Murray to retain.

43)     On or about June 26, 2007 thru June 28, 2007, Plaintiff continued to experience lack of proper medical attention and treatment from the Defendants despite their duty to provide same by way of the law and the Court's order.

44)     On or about June 30, 2007, the Plaintiff was formally advised by the Sussex County Jail's medical professionals that they refused to provide her with 200mg of extended release once a day Ultram as per her physician's prescription.

45)     Without this medicine, the Plaintiff continued to experience great pain and suffering.

46)     On or about June 30, 2007, the Plaintiff filed an administrative grievance pertaining to the substandard and contemptuous medical treatment she was receiving from the Defendants.

47)     During Inmate Vahaly's recreation time on or about July 2, 2007 at or about 4:00pm, Inmate Vahaly and C/O Murray had a conversation with Inmate Vahaly which lasted approximately one hour.

48)     On July 2, 2007 at or about 6:00pm the Plaintiff was present for the dinner call which was supervised by C/O Murray and Sgt. Duenskie.

49)     While acquiring her food tray, the Plaintiff renewed her request that what appeared to be human defecate (which had been present on the dayroom floor for several days) be removed.

50)      The Plaintiff then proceeded to the dining table and placed her tray thereupon. As she was about to sit down, she saw Inmate Vahaly run past C/O Murray's lunging distance and make a clenched fist which she then recoiled.

51)     Before she could react to what was about to manifest itself into an unpermitted, unwanted bodily touching, the Plaintiff observed Inmate Vahaly swing that recoiled fist in the direction of her face.

52)     Inmate Vahaly's fist made contact with the Plaintiff's nose in such a forceful manner that it caused the Plaintiff's entire body to exit her footwear and continue backwards only to come to rest by colliding head first into a concrete wall.

53)     As a direct and proximate cause of the said unpermitted, unwanted touching, the Plaintiff's nose was broken in *four* (4) places and her lip was split to the extent that it required *two* (2) stitches to stop the bleeding, thus amounting to serious and permanent bodily injury and disfigurement.

54)     Rather than render or acquire assistance to the Plaintiff, Inmate Vahaly then proceeded to stand over the Plaintiff for a few moments and yelled profanities at her which included, but were not limited to, "why don't you pray to your fucking God about that."

55)     Inmate Vahaly then cavalierly proceeded to her cell on the second tier leaving the Plaintiff on the floor bleeding profusely.

56)     Eventually C/O Murray and Sgt. Duenskie approached the Plaintiff and summoned a putative nurse of unknown identity who, at the time, had long red hair.

57)     No less than ten to fifteen minutes later, the said nurse attended to the Plaintiff and made the determination that the Plaintiff did not require hospital attention.

58)     The said nurse and someone believed to be Sergeant Terry (phonetic) then ordered the Plaintiff to rise to her feet. The Plaintiff refused and reiterated that she felt that her nose had been broken, her lip would not stop bleeding and that her pre – existing injuries had been aggravated.

59)     The aforementioned persons still ordered the Plaintiff onto her feet. It was only after the Plaintiff told the parties present to call her attorney Bruce LaCarrubba, Esq. that an ambulance was summoned and the Plaintiff was taken to Newton Memorial Hospital for diagnosis and treatment.

60)     After being triaged at the hospital, the Plaintiff and the Defendants received the Plaintiff's post – discharge and treatment instructions which included, but were not limited to a follow up appointment with Dr. Victor Gentile for a nasalplasty resetting of the Plaintiff's nose within 5 to 7 days of her discharge and to have her lip stitches removed by a medical doctor.

61)     Following the Plaintiff's return the Sussex County Jail, other inmates advised the Plaintiff on July 3, 2007 that Inmate Vahaly had assaulted and battered the Plaintiff on C/O Murray's behalf.

62)     On or about July 3, 2007, the Plaintiff was called into the sally port of the Sussex County Jail where she was met by C/O Murray. C/O Murray then escorted the Plaintiff into a room off the sally port and instructed by C/O Murray to sit down.

63)     C/O Murray then stated to the Plaintiff that "I know we have our differences but I never meant for *this*[1] to happen."

64)     Following this encounter with C/O Murray, the Plaintiff sought the assistance of Undersheriff DiMarco to file an administrative grievance against C/O Murray.

65)     Lieutenant Manno (Phonetic) an employee of the Sussex sheriff responded to the Plaintiff's request for assistance in filing a grievance.

66)     Lt. Manno intimidated the Plaintiff by stating that she still had another three to four months to go until she would be released from the Sussex County Jail and that she should reconsider her decision to proceed with filing an administrative grievance against C/O Murray and that she had thirty days before she had to act.

67)     Also on July 3, 2009, the Plaintiff was advised that her previous grievance pertaining to the lack of access to her prescribed medicine was resolved in her favor and that she would soon begin receiving her Ultram as per her physician's instructions.

68)     On July 5, 2007 Inmate Vahaly appeared before the Sussex County Jail Disciplinary Board to face administrative charges for her assault and battery of the Plaintiff which resulted in the injuries herein described.

69)     At the conclusion of the July 5, 2007 hearing, Inmate Vahaly was issued a punishment of 20 days of disciplinary detention, however Inmate Vahaly was released from Disciplinary Detention on July 23, 2007. Moreover, Inmate Vahaly had a cellmate during the last eight to ten days of her disciplinary detention.

---

[1] C/O Murray specifically placed special emphasis on the word "this."

70)     On July 8, 2007, the inmates housed in the tiers of the Plaintiff's cellblock were summoned to lineup in front of their cells for lunch.

71)     C/O Murray was present and was assigned to oversee this work detail.

72)     C/O Murray positioned herself within hearing distance of Inmate Vahaly's cell. Inmate Vahaly began singing rude remarks about other inmates which did not solicit any response from C/O Murray.

73)     When Inmate Vahaly sang rude remarks about the Plaintiff (*to wit* "Melanie you're in here because you committed a felony"), C/O Murray belted out a loud guffaw in front of Inmate Vahaly, the Plaintiff and other inmates causing the Plaintiff much embarrassment and further intimidating the Plaintiff.

74)     The Plaintiff then resumed communications with Lt. Manno with regard to pursuing an administrative grievance against C/O Murray.

75)     In a further attempt to dissuade the Plaintiff from filing an administrative grievance against C/O Murray he assured her that he would remove C/O Murray from the woman's tier for the remainder for the Plaintiff's term of incarceration.

76)     Although C/O Murray was removed from the tier "on paper" she still made her way back into the tier on several occasions for medical duty and dinner detail.

77)     On July 11, 2007, a putative nurse known as "Charlotte" (phonetic) who is an employee of the Defendants (as opposed to a medical doctor) finally removed the Plaintiff's stitches from her lip.

78)     While removing the Plaintiff's stitches, the putative nurse cut the Plaintiff's lip with a pair of scissors.

79)     Despite repeated requests made by the Plaintiff, requests from physicians and her discharge instructions, on or about July 16, 2007, the Defendants finally transported the Plaintiff to a qualified physician to provide her with follow up treatment for her broken nose.

80)     The Plaintiff was advised that due to the delay in seeking his care, the nose had set incorrectly and will require being rebroken and reset at a future time.

81)     This will be a painful and costly medical procedure.

82)     On July 19, 2007, the Plaintiff was taken to her first therapy secession at Fit for Life in Sparta. According to her post – discharge instructions, the Plaintiff was to begin therapy immediately and appear three times per week.

83)     The Defendants prevented this from happening.

84)     Due to her special medical circumstances, the Plaintiff's medical professionals recommended that she was not to share a cell with another inmate due to the potential for injury.

85)     Nevertheless, the Defendants disregarded the Plaintiff's medical needs as it pertained to sharing her cell and arranged for her to share a cell with at least one other inmate (*to wit* Lindsey Hutchinson (phonetic) who stole some of the Plaintiff's commissary property) and as many as two other inmates at times.

86)     The Plaintiff filed an administrative grievance. Although the said grievance was never adjudicated, the Plaintiff was eventually moved to another cell.

87)      On or about July 20, 2007, the Defendants placed the Plaintiff in what they called "protective custody" after inmate Denise Ackley (phonetic) threw a shirt at the Plaintiff and said "fuck you" to her.

88)     Although the Defendants labeled the Plaintiff's status as "protective custody" the Plaintiff's overall quality of life and liberties more closely resembled "disciplinary detention" status.

89)     Moreover, on July 23, 2007, Plaintiff's attorney had to write to the Defendants to object to the fact that the Plaintiff was being subjected to sleep deprivation due to the Defendants' refusal to turn the lights off near her cell at night as a matter of course or at the insistence of the Plaintiff.

90)     Additionally, this "protective custody" cell[2] was situated in a place in the Sussex County Jail where the Plaintiff had no personal privacy. For example, because it had a largely translucent door, she could not change or go to the bathroom without male officers and male inmates clearly observing her do so. It also had surveillance cameras pointed in the direction of the cell's toilet. These cameras were often monitored and observed by male corrections officers. Moreover, by assigning the Plaintiff this particular cell, the Defendants were portraying the Plaintiff in a false light *to wit* they were falsely portraying to the population that she was suicidal. The totality of the foregoing actions humiliated, degraded and demoralized the Plaintiff.

91)     Moreover, the Defendants prohibited the Plaintiff from showering from July 20, 2007 thru the evening of July 22, 2007.

92)     Between on or about July 20, 2007 and July 23, 2007, Plaintiff's legal counsel Bruce La Carrubba, Esq. dispatched written communications to the Defendants objecting to the disparate treatment the Plaintiff had been receiving from the Defendants.

93)     On July 23, 2007, the Defendants moved the Plaintiff to another floor and assigned her to the prison cell previously occupied by Inmate Vahaly.

---

[2] The Plaintiff alleges that this cell was actually one of four suicide watch cells.

94)    The Plaintiff considered this to be outrageous conduct under the circumstances and caused her great emotional distress.

95)    On July 24, 2007, the Plaintiff contacted Lt. Manno to proceed with her administrative grievance against C/O Murray and some of the Defendants and to follow up on the other administrative grievances filed by her.

96)    When Lt. Manno came to the Plaintiff's cell he was irate and rude in tone and stated that he refused to assist her in preparing the administrative grievance against anyone.

97)    The Plaintiff then memorialized her desire in writing to proceed with filing an administrative grievance regarding the July 2, 2007 incident and the substandard access to medical care she had been subjected to.

98)    The said writing was made to the attention of Undersheriff David Di Marco and Lt. Manno.

99)    The Plaintiff received no assistance in filing the administrative grievance, nor did she ever receive any administrative relief in this regard.

100)   By on or about August 2, 2007, the Plaintiff's access to physical therapy was scaled back from three times a week to a total cessation despite of the fact that physical therapy in this frequency was medically necessary.

101)   On August 2, 2007, the Plaintiff made a written inquiry to the Sussex County Jail Medical Department as to her access to physical therapy.

102)   The Defendants never responded.

103)   On August 3, 2007, the Plaintiff was released from what the Defendants labeled "protective custody" another inmate (*to wit* Estelle Walker) was assigned to share a cell with the Plaintiff.

104)    On or about September 5, 2007, the Plaintiff made a request to Undersheriff Di Marco regarding her lack of access to any physical therapy which was medically necessary and by virtue of same required by Judge Farber's standing order.

105)    It was not until the Plaintiff once again involved her legal counsel Bruce La Carrubba, Esq. that some intermittent physical therapy resumed.

106)    On September 19, 2007, the Plaintiff made a request for and extra blanket because the location of her cell was unusually cold and the absence of ambient temperature was causing her great pain due to an aggravation of her medical infirmities.

107)    On September 9, 2007, the Plaintiff was notified by the Defendants that her request for a medically necessary blanket was denied and she was instructed to "layer her clothes."

108)    On several occasions during the Plaintiff's period of incarceration, the Sussex County Jail was overcrowded and operating beyond its reasonable inmate population capacity.

109)    This retaliatory, malicious and disparate denial to access to a medically necessary and basic human comfort blanket was particularly outrageous considering that other female inmates without special medical needs had as many as three blankets.

110)    Despite all of the fact that the Plaintiff has exhausted all attempts to comply with the Defendants' "administrative procedures" (and has even been the victim of retaliation as a result thereof) the Plaintiff prays for relief and just deserts from this Honorable Court.

111)    The information required by the New Jersey Tort Claims Act was furnished to the Defendants, Sgt. Duenskie and C/O Murray within the time limitations and manner that such information must be furnished.

**COUNT ONE**
**ABRIDGEMENT OF THE FREEDOM TO PETITION**
**THE GOVERNMENT FOR REDRESS**
**IN VIOLATION OF THE FIRST AMENDMENT**
**OF THE UNITED STATES CONSTITUTION AND**
**ARTICLE I, PARAGRPAH XVII OF THE**
**CONSTITUTION OF THE STATE OF NEW JERSEY**
**42 USC §1983**
**&**
**42 USC §1997d**

1)      All previous and following paragraphs are incorporated herein as if set forth at length.

2)      The First Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment of the United States Constitution, and Article I, Paragraph XVII of the Constitution of the State of New Jersey guarantees to all persons, freedom to petition the government for redress of grievances.

3)      The Defendants, Lt. Manno and / or C/O Murray and / or Sgt. Duenskie jointly and severally have a duty not to abridge the Plaintiff's freedom to petition the Government for redress of grievances.

4)      The Defendants have a duty to adequately train, promulgate and implement lawful policy and / or supervise their subordinates.

5)      Upon information and belief, the Defendants, Lt. Manno, C/O Murray and / or Sgt. Duenskie jointly and severally have a policy, custom and practice of retaliatorily disciplining inmates who petition the government for redress.

6)      Upon information and belief, the Defendants, Lt. Manno, C/O Murray and / or Sgt. Duenskie jointly and severally had actual or constructive knowledge of the risk of harm

their: (i.) policy, custom and practice of retaliatorily disciplining inmates who petition the government for redress has upon their rights to freely exercise that right; and (ii.) failure to adequately train and supervise their subordinates poses on the inmate population which included the Plaintiff.

7)      Acting under color of law and pursuant to their policy, custom and practice of retaliatory discipline and failing to adequately train and supervise their subordinates, the Defendants, Lt. Manno, C/O Murray and / or Sgt. Duenskie jointly and severally exacted retaliatory discipline upon the Plaintiff, examples include, but are not limited to subjecting her to cruel and unusual punishment; denying her access to necessary and timely medical care and medication and / or depriving her of sleep.

8)      The Defendants', Lt. Manno's, C/O Murray's and / or Sgt. Duenskie's joint and several custom and practice of permitting a retaliatory discipline policy and failing to adequately train and supervise their subordinates shows deliberate indifference to the Plaintiff's rights guaranteed under the First Amendment of the United States Constitution, Article I, Paragraph XVII of the Constitution of the State of New Jersey and 42 USC §1997d.

9)      The Defendants', Lt. Manno's, C/O Murray's and / or Sgt. Duenskie's joint and several custom and practice of retaliation under their retaliatory discipline policy and their failure to adequately train and supervise their subordinates violated the Plaintiff's right to petition the government for redress under the First Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment of the United States Constitution and Article I, Paragraph XVII of the Constitution of the State of New Jersey and was the direct and proximate cause of the deprivation of her constitutional rights guaranteed by the First and Fourteenth amendments of the Constitution of the United States and Article I,

Paragraph XVII of the Constitution of the State of New Jersey as protected by 42 U.S.C. § 1983 and / or 42 USC §1997d and other applicable laws.

WHEREFORE, the Plaintiff demands damages against all defendants named herein jointly and severally punitive, statutorily and otherwise together with reasonable attorney's fees, injunctive relief, costs of court, suit and any and all other relief as the Court may deem just and proper.

**COUNT TWO**
**ABRIDGEMENT OF THE FREEDOM TO BE FREE OF INFLICTION OF CRUEL**
**AND UNUSUAL PUNISHMENT**
**IN VIOLATION OF THE EIGHTH AMENDMENT**
**OF THE UNITED STATES CONSTITUTION AND**
**ARTICLE I, PARAGRPAH XII OF THE**
**CONSTITUTION OF THE STATE OF NEW JERSEY**
**42 USC §1983**

1)      All previous and following paragraphs are incorporated herein as if set forth at length.

2)      The Eighth Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment of the United States Constitution and Article I, Paragraph XII of the Constitution of the State of New Jersey guarantees to all persons, freedom from the infliction of cruel and unusual punishment.

3)      The Defendants, Lt. Manno, C/O Murray and / or Sgt. Duenskie jointly and severally have a duty not to inflict cruel and unusual punishment upon the Plaintiff and to adequately train and supervise their subordinates so to ensure they do not engage in such acts.

4)      The Defendants had a duty to promulgate and implement lawful policy to ensure that their subordinates do not inflict cruel and unusual punishment upon the Plaintiff while she was in their custody.

5)      Upon information and belief, the Defendants, Lt. Manno, C/O Murray and / or Sgt. Duenskie jointly and severally have a policy, custom and practice of inflicting cruel and unusual punishment upon inmates who include, but are not limited to the Plaintiff.

6)       Upon information and belief, the Defendants, Lt. Manno, C/O Murray and / or Sgt. Duenskie jointly and severally have a policy, custom and practice of failing to adequately train and supervise their subordinates so they do not inflict unusual punishment upon inmates who include, but are not limited to the Plaintiff.

7)      Upon information and belief, the Defendants, Lt. Manno, C/O Murray and / or Sgt. Duenskie jointly and severally had actual or constructive knowledge of the risk of harm their: (i.) policy, custom and practice of inflicting cruel and unusual punishment upon inmates such as the Plaintiff; and (ii.) failure to adequately train and supervise their subordinates so they do not inflict cruel and unusual punishment upon inmates which include, but are not limited to the Plaintiff.

8)      Acting under color of law and pursuant to their policy, custom and practice of inflicting cruel and unusual punishment and failing to adequately train and supervise their subordinates, the Defendants, Lt. Manno, C/O Murray and / or Sgt. Duenskie jointly and severally inflicted cruel and unusual punishment upon the Plaintiff, examples of which include, but are not limited to: physically abusing her, conspiring and consorting with others to physically abuse her; denying her access to necessary and timely medical care and medication and / or depriving her of sleep.

9)      The Defendants', Lt. Manno's, C/O Murray's and / or Sgt. Duenskie's joint and several custom and practice of inflicting cruel and unusual punishment and failing to adequately train and supervise their subordinates so that they do not engage in acts consisting of infliction of cruel and unusual punishment shows deliberate indifference to the Plaintiff's

rights guaranteed under the Eighth Amendment of the United States Constitution and Article I, Paragraph XII of the Constitution of the State of New Jersey.

10)     The Defendants', Lt. Manno's, C/O Murray's and / or Sgt. Duenskie's joint and several custom and practice of inflicting cruel and unusual punishment upon inmates such as the Plaintiff and their failure to adequately train and supervise their subordinates violated the Plaintiff's right to be free of the infliction of cruel and unusual punishment under the Eighth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment of the United States Constitution and Article I, Paragraph XII of the Constitution of the State of New Jersey and was the direct and proximate cause of the deprivation of her constitutional rights guaranteed by the Eighth and Fourteenth amendments of the Constitution of the United States and Article I, Paragraph XII of the Constitution of the State of New Jersey as protected by 42 U.S.C. § 1983 and other applicable laws.

WHEREFORE, the Plaintiff demands damages against all defendants named herein jointly and severally punitive, statutorily and otherwise together with reasonable attorney's fees, injunctive relief, costs of court, suit and any and all other relief as the Court may deem just and proper.

## COUNT THREE
**ABRIDGEMENT OF THE FREEDOM TO BE FREE OF DEPRIVATION OF LIBERTY AND / OR PROPERTY WITHOUT DUE PROCESS OF LAW IN VIOLATION OF THE FIFTH AMENDMENT OF THE UNITED STATES CONSTITUTION AND ARTICLE I, PARAGRPAH I OF THE CONSTITUTION OF THE STATE OF NEW JERSEY 42 USC §1983**

1)     All previous and following paragraphs are incorporated herein as if set forth at length.

2)      The Fifth Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment of the United States Constitution and Article I, Paragraph I of the Constitution of the State of New Jersey guarantees to all persons, freedom from being deprived of personal property and /or liberty without due process of law.

3)      The Defendants, Lt. Manno, C/O Murray and / or Sgt. Duenskie jointly and severally have a duty not to deprive the Plaintiff of liberty and / or property without due process of law and to adequately train and supervise their subordinates so to ensure they do not engage in such acts.

4)      The Defendants had a duty to promulgate and implement lawful policy to ensure that their subordinates do not deprive the Plaintiff of liberty and / or property without due process of law while she was in their custody.

5)      Upon information and belief, the Defendants, Lt. Manno, C/O Murray and / or Sgt. Duenskie jointly and severally have a policy, custom and practice of depriving inmates of liberty and / or property without due process of law who include, but are not limited to the Plaintiff.

6)       Upon information and belief, the Defendants, Lt. Manno, C/O Murray and / or Sgt. Duenskie jointly and severally have a policy, custom and practice of failing to adequately train and supervise their subordinates so they do not to deprive inmates of liberty and / or property without due process of law inflict who include, but are not limited to the Plaintiff.

7)      Upon information and belief, the Defendants, Lt. Manno, C/O Murray and / or Sgt. Duenskie jointly and severally had actual or constructive knowledge of the risk of harm their: (i.) policy, custom and practice of depriving inmates such as the Plaintiff of liberty and / or property without due process of law; and (ii.) failure to adequately train and supervise

their subordinates so they do not deprive inmates such as the Plaintiff of liberty and / or property without due process of law.

8)      Acting under color of law and pursuant to their policy, custom and practice of depriving inmates such as the Plaintiff of liberty and / or property without due process of law and failing to adequately train and supervise their subordinates, the Defendants, Lt. Manno, C/O Murray and / or Sgt. Duenskie jointly and severally deprived the Plaintiff of liberty and / or property without due process of law.

9)      The Defendants', Lt. Manno's, C/O Murray's and / or Sgt. Duenskie's joint and several custom and practice of inflicting cruel and unusual punishment and failing to adequately train and supervise their subordinates so that they do not engage in acts consisting of infliction of cruel and unusual punishment shows deliberate indifference to the Plaintiff's rights guaranteed under the Eighth Amendment of the United States Constitution and Article I, Paragraph XII of the Constitution of the State of New Jersey.

10)      The Defendants', Lt. Manno's, C/O Murray's and / or Sgt. Duenskie's joint and several custom and practice of depriving inmates such as the Plaintiff of liberty and / or property without due process of law and their failure to adequately train and supervise their subordinates to prevent same from occurring violated the Plaintiff's right to be free of being deprived of liberty and property under the Eighth Amendment to the United States Constitution, as incorporated by the Fourteenth Amendment of the United States Constitution and Article I, Paragraph I of the Constitution of the State of New Jersey and was the direct and proximate cause of the deprivation of her constitutional rights guaranteed by the Eighth and Fourteenth amendments of the Constitution of the United States and Article I, Paragraph I of the Constitution of the State of New Jersey as protected by 42 U.S.C. § 1983 and other applicable laws.

WHEREFORE, the Plaintiff demands damages against all defendants named herein jointly and severally punitive, statutorily and otherwise together with reasonable attorney's fees, injunctive relief, costs of court, suit and any and all other relief as the Court may deem just and proper.

## COUNT FOUR
### CONSPIRACY TO INTERFERE WITH CIVIL RIGHTS
### IN VIOLATION OF 42 U.S.C. §1985

1)      All previous and following paragraphs are incorporated herein as if set forth at length.

2)      Under color of law, the Defendants, Lt. Manno, Sgt. Duenski, C/O Murray and Inmate Vahaly (collectively the "Conspirators") jointly and severally agreed to aid each other and / or other persons in the planning, and / or commission of depriving the Plaintiff of her civil rights.

3)      The conspirators agreed to deprive, and in furtherance of that agreement, did actually deprive the Plaintiff of her rights as a citizen of the United States which include, but are not limited to equal protection of law, due process of law, to petition the government of redress of grievances, to be free of the infliction of cruel and unusual punishment and not to be deprived of liberty and / or property without due process of law, a violation of 42 U.S.C. §1985.

4)      As a direct and proximate cause of the foregoing, The Plaintiff has suffered great damages.


WHEREFORE, the Plaintiff demands damages against all defendants named herein jointly and severally punitive, statutorily and otherwise together with reasonable attorney's fees,

injunctive relief, costs of court, suit and any and all other relief as the Court may deem just and proper.

## COUNT FIVE
## NEGLIGENCE

1)      All previous and following paragraphs are incorporated herein as if set forth at length herein.

2)      The Defendants, Lt. Manno, Sgt. Duenski, C/O Murray and Inmate Vahaly jointly and severally owed the Plaintiff a duty to exercise reasonable care to protect her safety and wellbeing.

3)      The Defendants, Lt. Manno, Sgt. Duenski, C/O Murray and Inmate Vahaly jointly and severally breached their duty of reasonable care by failing to protect the Plaintiff by departing from the reasonable standard of prudence which a person would ordinarily exercise in order to prevent reasonably foreseeable harm.

4)      As a direct and proximate cause of the foregoing, the Plaintiff has suffered great damages.


WHEREFORE, the Plaintiff demands damages against all defendants named herein jointly and severally punitive, statutorily and otherwise together with reasonable attorney's fees, injunctive relief, costs of court, suit and any and all other relief as the Court may deem just and proper.


## COUNT SIX
## ASSAULT

1)      All previous and following paragraphs are incorporated herein as if set forth at length herein.

2)      Sheriff Untig, Lt. Manno, Sgt. Duenski, C/O Murray and Inmate Vahaly jointly and severally intentionally caused the Plaintiff to suffer reasonable apprehensions of battery.

3)      As a direct and proximate cause of the foregoing, the Plaintiff has suffered great damages.


WHEREFORE, the Plaintiff demands damages against all defendants named herein jointly and severally punitive, statutorily and otherwise together with reasonable attorney's fees, injunctive relief, costs of court, suit and any and all other relief as the Court may deem just and proper.


## COUNT SEVEN
### BATTERY

1)      All previous and following paragraphs are incorporated herein as if set forth at length.

2)      Inmate Vahaly individually and / or acting in consort with Sheriff Untig, Lt. Manno, Sgt. Duenski and / or C/O Murray intentionally and non – consensually touched and / or struck the Plaintiff in an offensive manner.

3)      As a direct and proximate cause of the foregoing, the Plaintiff has suffered great damages.


WHEREFORE, the Plaintiff demands damages against all defendants named herein jointly and severally punitive, statutorily and otherwise together with reasonable attorney's fees,

injunctive relief, costs of court, suit and any and all other relief as the Court may deem just and proper.

## COUNT EIGHT
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

1)    All of the previous and proceeding paragraphs are incorporated herein as if set forth at length.

2)    The Defendants, Lt. Manno, Sgt. Duenski, C/O Murray and Inmate Vahaly jointly and severally acted intentionally and / or recklessly in an extreme and / or outrageous manner, which was so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency and to be regarded as atrocious and utterly intolerable in a civilized community and rose to the level that no reasonable person could be expected to endure.

3)    As a direct and proximate cause of the foregoing, the Plaintiff has suffered and shall continue to suffer severe emotional pain and suffering and other great damages.

WHEREFORE, the Plaintiff demands damages against all defendants named herein jointly and severally punitive, statutorily and otherwise together with reasonable attorney's fees, injunctive relief, costs of court, suit and any and all other relief as the Court may deem just and proper.

## COUNT NINE
## CONSPIRACY TO COMMIT TORT

1)      All previous and following paragraphs are incorporated herein as if set forth at length.

2)      The Defendants, Lt. Manno, Sgt. Duenski, C/O Murray and Inmate Vahaly jointly and severally conspired to commit one and / or more tortuous acts and / or inactions upon the Plaintiff.

3)      As a direct and proximate cause of the foregoing, the Plaintiff has suffered and shall continue to suffer severe emotional pain and suffering and other great damages.


WHEREFORE, the Plaintiff demands damages against all defendants named herein jointly and severally punitive, statutorily and otherwise together with reasonable attorney's fees, injunctive relief, costs of court, suit and any and all other relief as the Court may deem just and proper.

## COUNT TEN
## HARASSMENT

1)      All previous and following paragraphs are incorporated herein as if set forth at length.

2)      The Defendants, Lt. Manno, Sgt. Duenski, C/O Murray and Inmate Vahaly jointly and severally harassed the Plaintiff.

3)      As a direct and proximate cause of the foregoing, the Plaintiff has suffered and shall continue to suffer severe emotional pain and suffering and other great damages.


WHEREFORE, the Plaintiff demands damages against all defendants named herein jointly and severally punitive, statutorily and otherwise together with reasonable attorney's fees, injunctive relief, costs of court, suit and any and all other relief as the Court may deem just and proper.

## COUNT ELEVEN
## NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

1) All previous paragraphs are incorporated herein as if set forth at length.

2) The Defendants, Lt. Manno, Sgt. Duenski, C/O Murray and Inmate Vahaly's joint and several acts of negligence caused the Plaintiff fright from a reasonable fear of immediate personal injury proximately causing her great emotional distress.

WHEREFORE, the Plaintiff demands damages against all defendants named herein jointly and severally punitive, statutorily and otherwise together with reasonable attorney's fees, injunctive relief, costs of court, suit and any and all other relief as the Court may deem just and proper.

Dated: June 19, 2009

By:_____
       DAMIANO M. FRACASSO,
       Attorney for the Plaintiff

## JURY DEMAND

The Plaintiff hereby demands trial by jury as to all issues.

By:_____
       DAMIANO M. FRACASSO,
       Attorney for the Plaintiff

## CERTIFICATION PURSUANT TO LOCAL RULE 11.2

I certify that the matter in controversy is not the subject of any other action pending in any other court, or of any pending arbitration or administrative proceeding.

By:_____

DAMIANO M. FRACASSO,
Attorney for the Plaintiff

## <u>DESIGNATION OF TRIAL COUNSEL</u>

The Plaintiff designates **DAMIANO M. FRACASSO, ESQUIRE** as her trial counsel.

By:_____
DAMIANO M. FRACASSO,
Attorney for the Plaintiff