UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY VICINAGE OF NEWARK

**DAMIANO M. FRACASSO,**
**ATTORNEY AT LAW**
500 INTERNATIONAL DRIVE
SUITE 155
MT. OLIVE, NJ 07828 – 1385
TEL 973.448.1110
FAX 973.529.0306
**dmfesq@fracassolaw.com**
ATTORNEY FOR THE PLAINTIFF

```
-----------------------------X
                             :
MELANIE POLLIS,              :
                             :
        PLAINTIFF,           :
                             :
VS.,                         :
                             :
BOARD OF CHOSEN FREEHOLDERS  :
OF THE COUNTY OF SUSSEX, STATE :
OF NEW JERSEY, OFFICE OF THE :
SUSSEX COUNTY SHERIFF, ROBERT :
UNTIG, INDIVIDUALLY AND IN HIS :
OFFICIAL CAPACITY OF SUSSEX  :
COUNTY SHERIFF, THE STATE OF :
NEW JERSEY, CORRECTIONS OFFICER :
ALLISON MURRAY, INDIVIDUALLY :
AND IN HER OFFICIAL CAPACITY, :
SGT. RON DUENSKIE, INDIVIDUALLY :
AND IN HIS OFFICIAL CAPACITY, :
DAWN VAHALY, LIEUTENANT SCOTT :
MANNO, INDIVIDUALLY AND IN HIS :
OFFICIALLY CAPACITY, JOHN DOES :
1 – 99 WHO ARE FICTITIOUS AND :
PRESENTLY UNKNOWN PERSONS,    :
ENTITIES AND BODIES POLITIC  :
IN THEIR INDIVIDUAL AND OFFICIAL :
CAPACITIES,                  :
                             :
        DEFENDANTS.          :
                             :
-----------------------------X
```

CIVIL ACTION NUMBER    2:09-cv-3009

**ORAL ARGUMENT REQUESTED**

RETURN DATE:    JULY 19, 2010

---

**PLAINTIFF'S BRIEF IN OPPOSITION TO THE DEFENDANTS' MOTION TO DISMISS**

# TABLE OF CONTENTS

FACTS ................................................................ 1

I.    THE PLAINTIFF HAS SUCCESSFULLY PLEAD COGNIZABLE CAUSES OF ACTION IN ACCORDANCE WITH THE FEDERAL RULES OF CIVIL PROCEDURE. ... 2

    A.)  THE PLAINTIFF'S COMPLAINT PLEADS SPECIFIC FACTS WHICH ALLEGE THE VIOLATION OF RIGHTS GUARANTEED TO HER UNDER THE CONSTITUTIONS OF THE UNITED STATES OF AMERICA AND THE STATE OF NEW JERSEY. ... 9

        i.  PLAINTIFF'S FAILURE TO PROTECT / STATE – CREATED DANGER CLAIMS AGAIST THE DEFENDANTS. ... 12

        ii.  PLAINTIFF'S RETALIATION CLAIMS. ... 15

        iii.  PLAINTIFF'S CRUEL AND UNUSUAL CLAIMS. ... 17

            a. THE DISCIPLINARY DETENTION AND SEXUAL HUMILIATION AND DEGREGATION. ... 17

            b. DENIAL OF ACCESS TO ACCESS TO MEDICAL CARE / TREATMENT AND PRESCRIPTION AND OVER THE COUNTER MEDIATION FOR INJURIES SUSTAINED AS AN INMATE AND PRE – EXISTING INJURIES. ... 23

            c. THE BROKEN NOSE & LACERATED LIP. ... 28

    B.)  THE PLAINTIFF'S COMPLAINT PLEADS SPECIFIC FACTS WHICH ALLEGE VIOLATIONS OF 42 U.S.C. §1985(3) ... 29

    C.)  THE PLAINTIFF'S COMMON LAW CAUSES OF ACTION SPEAK FOR THEMSELVES. ... 32

II.  THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY. ... 33

CONCLUSION ... 40

## TABLE OF AUTHORITIES

### Reported Cases

Accord Robinson v. City of Pittsburgh,                            32
120 F.3d 1286, 1293 – 96 (3d Cir.1997)

Al – Kidd v. Ashcroft, 2009 WL 2836448 (9th Cir.)                 5

Ashcraft v. State of Tenn., 322 U.S. 143, 151 (1944)             21

Ashcroft v. Iqbal, 555 U.S. ____, 129 S.Ct. 1937 (2009)      passim

Bacon v. Minner, 229 Fed.Appx. 96, 100, 2007 WL 1157138, 2 (3rd Cir. 2007)   20

Baker v. Monroe Twp., 50 F.3d 1186, 1190 – 91 (3d Cir.1995)     34

Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007)         6

Brimage v. Hayman, 2006 WL 3535282 (D.N.J. 2006)                10

DeShaney v. Winnebago County Dept. of Social Services,          11
489 U.S. 189, 200 (1989)

Erickson v. Pardus, 551 U.S. 89, 93 (2007)                       4

Estelle v. Gamble, 429 U.S. 97, 102–105 (1976)               24, 26

Farmer v. Brennan, 511 U.S. 825, 833 – 835 (1994)            14, 37

Fuchilla v. Layman, 210 N.J. Super. 574, 286 (App. Div. 1986)   32

Gomez v. Toledo, 446 U.S. 635, 640 (1980)                       36

Helling v. McKinney, 509 U.S. 25, 32 (1993)                     10

Hoptowit v. Ray, 682 F.2d 1237 (9th Cir. 1982)                  28

Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir.1985)        21,22

Hubbard v. Taylor, 538 F.3d 229, 231 (3d Cir.2008)             35

Hudson v. Palmer, 468 U.S. 517, 530 (1984)                     22

Hughes v. Roe, 449 U.S. 5 (1980)                                4

Hunt v. Weatherbee, 626 F. Supp. 1097 (D. Mass 1986)           30

Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 83 (1954)   3

Kneipp v. Tedder, 95 F. 3d 1199 (3rd Cir. 1996)                12

Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996)             21

Kentucky v. Graham, 473 U.S. 159, 166 (1985)                   34

Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 7, 36
507 U.S. 163, 165 – 168 (1993)

Lee v. Washington County Bd. Of Ed., 625 F.2d 1235 (5th Cir. 1980)                4

Mark v. Borough of Hatboro, 51 F. 3d 1137, 1152 (3rd Cir. 1995)                  13

Memphis Community School District v. Stachura, 477 U.S. 299 (1986)               4

Monell v. New York City Department of Social Services,                       33, 34
436 U.S. 658, 690 – 91, 694 (1978)

See Monmouth County Corr. Inst. Inmates v. Lanzaro,                             26
834 F.2d 326, 347 (3rd Cir 1987)

Maldonado v. Terhune, 28 F. Supp. 2d 284, 289 (D.N.J. 1998)                     26

Miller v. Clinton County, 544 F.3d 542, 547 (3d Cir.2008)                       35

Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir.1997)              4

Natale v. Camden County Correctional Facility,                                  34
318 F.3d 575, 583–84 (3d Cir.2003)

Odd v. Malone, 538 F.3d 202, 217 (3d Cir.2008)                                  35

Owens v. Feigin, 194 N.J. 607, 609 (2008)                                       32

Paul v. Davis, 424 US 693, 696 (1976)                                          23

Perez v. Cucci, 725 F.Supp. 209, 247 (D.N.J.1989)                              30

Prisoners' Legal Ass'n v. Roberson, 822 F.Supp. 185 (189) (D.N.J. 1993)        22

Pulliam v. Allen, 466 U.S. 522, 541 – 545 (1984)                               39

Rauser v. Horn, 241 F.3d 330 (3rd Cir. 2001)                                   15

Rich v. Zitney, 644 F.2d 41 (1st Cir 1981)                                      4

Richardson v. McKnight, 521 U.S. 399 (1997)                                     9

Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988)                       34

Sandin v. Connor, 515 U.S. 472, 485 (1995)                                     22

Sanford v. Stiles, 456 F. 3rd 298, 303 – 304 (3rd Cir. 2006)                   13

Saucier v. Katz, 533 U.S. 194, 200 (2001)                                  34,35,37

Scher v. Engelke, 943 F. 2d 921, 923 – 24 (8th Cir. 1991)                      17

Schneider v. Simonini, 314 N.J.Super. 583, 595, (App. Div. 1998)              15

Spruill v. Gillis, 372 F.3d 218, 236 n. 12 (3d Cir. 2004)                      22

Todaro v. Ward, 565 U.S. 97 (2nd Cir. 1977)                                    31

Tower v. Glover, 467 U.S. 914 (1984)                              30

Velez v. City of Jersey City, 180 N.J. 284, 290 (2004)           32

Watson v. Caton, 984 F.2d 537 (1st Cir. 1993)                    31

Williams v. Bitner, 455 F.3d 186, 191 (3d Cir.2006)              35

West v. Atkins, 487 U.S. 42, 48 (1988)                            6

Youngberg v. Romeo, 457 U.S. 307, 315-316 (1982)                 12

## Statutes

42 U.S.C. §1983                                                   3

42 U.S.C. §1985                                                3, 22

42 USCS § 1997e                                                  16

42 U.S.C. §1988                                                  41

N.J.S.A. 30:7E - 5                                               25

N.J.S.A. 10:6 - 1                                              3,32

## State Administrative Codes

N.J.A.C. 10A:31-8.13                                             21

N.J.A.C. 10A:31-12.8(a)                                          14

N.J.A.C. 10A:31-13.1                                        23,25,27

N.J.A.C. 10A:31-13.15                                            23

N.J.A.C. 10A:31-14.2                                             13

N.J.A.C. 10A:31-18.1                                             18

N.J.A.C. 10A:31-18.2                                             18

N.J.A.C. 10A:31-18.5                                             18

N.J.A.C. 10A:31-18.6                                             19

N.J.A.C. 10A:31-12.8(a)                                          19

N.J.A.C. 10A:31-17.4                                             20

N.J.A.C. 10A:31-26.4                                             19

**Constitutions**

Constitution of the United States of America                    *Passim*

Constitution of the State of New Jersey                         *Passim*

**Rules of Civil Procedure**

<u>F.R.C.P.</u> 6                                                    2

<u>F.R.C.P.</u> 8                                               3,6,35

<u>F.R.C.P.</u> 9                                                    8

## **<u>FACTS</u>**

In the interests of time and to reduce the length of this brief, the Plaintiff incorporates the factual allegations set forth in her First Amended Complaint into this Brief and accompanying certification as if set forth at length herein. Defendants' motion is wholly premature and is predicated for the most part on the "she got what was coming to her" defense. The Plaintiff was incarcerated for a statutorily mandated alcohol related offense. Contrary to what the Defendants suggest, this status does not entitle them deprive her of her most basic rights of a human being and as a United States Citizen. Inmates in County jails are not piñatas and playthings for sadistic enjoyment of jail personnel. The Defendants' ***<u>pre − answer</u>*** motion to dismiss does not contain one single certification from anyone who denies any of the Plaintiff's allegations. The Defendants predicate their motion of their attorney's baseless (and unsworn) assertion that the facts pled in the Plaintiff's complaint are "implausible." The Plaintiff suffered a broken nose, a lacerated lip (that now has nerve damage)an aggravated injury to a pre − existing injury, sleep deprivation, denial of access to medical care, sexual humiliation and various liberty deprivations as a result of the very same conduct which the Defendants' attorney considers "implausible."

It is rather troublesome that the Defendants can assert that the Plaintiff's allegations are "implausible" when the Defendants admit to much of the conduct alleged of in the Plaintiffs' complaint (**00001 – 00003**). Furthermore, on July 16, 2007, the Plaintiff's treating physician Dr. David Basch, MD, FAAOS rendered a written report opining that it was his opinion that the Plaintiff's "current symptoms, injuries and diagnosis are noted above, are related to her assault that occurred on July 2, 2007..." and that she"... remains completely disabled and not able to return to work in any capacity." (**00006 – 00007**) The Defendants need much more than literally wishing away the facts to deprive the Plaintiff of her day in court by way of a dismissal pursuant to <u>F.R.C.P.</u> 6(b)(2).

I.   **THE PLAINTIFF HAS SUCCESSFULLY PLEAD COGNIZABLE CAUSES OF ACTION IN ACCORDANCE WITH THE <u>FEDERAL RULES OF CIVIL PROCEDURE</u>.**

In their motion to dismiss the Plaintiff's complaint, Defendants assert that the Plaintiff's complaint fails to allege causes of action upon which relief can be granted. This follows the Court's order of April 22, 2010 which ordered the Plaintiff to rewrite her amended complaint. The Plaintiff's amended complaint comports with the Court's concerns in the said order

as well as the controlling Rules of Federal Civil Procedure and applicable case law.

The Plaintiff's complaint alleges violations of her civil rights under 42 U.S.C. §1983 and 42 U.S.C. §1985, Conspiracy to Commit at Tort,[1] Violation of State Civil Rights under N.J.S.A. 10:6 – 1, *et seq.*, Harassment, Negligent Infliction of Emotional Distress, Assault, Battery, Intentional Infliction of Emotional Distress and Negligence. All of these causes of action are cognizable causes of action in this jurisdiction.

Second, both the Federal Rules of Civil Procedure and the Court's Order of December 19, 2009 both required that "each averment of a pleading [contained in the Plaintiff's complaint] shall be simple, concise and direct. No technical forms of pleading or motions are required." Furthermore, F.R.C.P. 8(f) provides that "all pleadings shall be so construed as to do substantial justice." A complaint must plead facts sufficient at least to "suggest" a basis for liability. Spruill v. Gillis*,* 372 F.3d 218, 236 n. 12 (3d Cir. 2004). Specific facts are not necessary; the complaint need only give the defendant fair

---

[1] Contrary to what the Defendants contend, conspiracy to commit a tort is a cognizable cause of action in the State of New Jersey. c.f. Judson v. Peoples Bank & Trust Co. of Westfield, 17 N.J. 67, 83 (1954).

notice of what the ... claim is and the grounds upon which it rests. Erickson v. Pardus, 551 U.S. 89, 93 (2007).

In fact, complaints, especially those filed by prisoners under 43 U.S.C. §1983 are to be construed liberally. Hughes v. Roe, 449 U.S. 5 (1980). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir.1997). Once the Plaintiff has made out a *prima facie* case in a Federal Civil Rights lawsuit, the burden of going forward with evidence shifts to the Defendant to state that the allegations are untrue. Lee v. Washington County Bd. Of Ed., 625 F.2d 1235 (5th Cir. 1980), Rich v. Zitney, 644 F.2d 41 (1st Cir 1981). As for damages, in addition to punitive damages, compensatory damages for emotional distress, embarrassment and humiliation are available to a Plaintiff in a §1983 action. Memphis Community School District v. Stachura, 477 U.S. 299 (1986).

The Defendants rely heavily on the recent United States Supreme Court "5 – 4" decision of Ashcroft v. Iqbal, 555 U.S. ____, 129 S.Ct. 1937 (2009) to support their motion. Unlike, Mr. Iqbal, **_this Plaintiff is not_** a citizen of a foreign country who

was in this county illegally and subsequently detained by the United States Department of Justice for defrauding the United States of American and for being a suspected Al Queda operative directly affiliated with the attacks on the United States of America on September 11, 2001. This Plaintiff is an American Citizen who was serving a statutorily mandated 180 day sentence in a county jail for a traffic violation. It is interesting to note that according to the facts of the Ashcroft case, the worst that the Department of Justice "dished out" to an Al Queda terror suspect allegedly associated with the attacks of September 11, 2001 was a punch in the face, a kick in the stomach, a dragging across his cell and being held in lockdown 23 hours a day while spending the remaining hour outside of his cell in handcuffs and leg irons accompanied by a four-officer escort. In stark contrast, the Plaintiff in this case has medical documentation of a broken nose, a lacerated lip (that now has nerve damage and scarring), aggravated injury to a pre – existing neck and back condition which renders her permanently disabled, sleep deprivation, denial of access to medical care, and sexual humiliation.

On a final note, on September 4, 2009, in the matter of Al – Kidd v. Ashcroft, 2009 WL 2836448 (9th Cir.), the Ninth Circuit already severely limited the application of Ashcroft v. Iqbal

and allowed that Plaintiff (who, by the way was a United States Citizen) to proceed with his _Bivens_ action against former United States Attorney General Ashcroft due to the fact that he, among other things, personally participated in the Plaintiff's deprivation of civil rights through, among other things, abusing the use of material witness warrants in order to unlawfully deprive him of his civil rights.


The Plaintiff's amended complaint (which the Defendants have not even answered yet) pleads cognizable causes of action in this jurisdiction and in the form and manner set forth in the _Federal Rules of Civil Procedure_. Furthermore, absolutely no discovery has taken place yet. The adequacy of pleadings is governed by _F.R.C.P._ 8(a)(2), which requires that a complaint allege "a short and plain statement of the claim showing that the pleader is entitled to relief." This Rule "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level." _Bell Atlantic Corp. v. Twombly_, 550 U.S. 544, 555 (2007). In both _Ashcroft_ and _Twombly_, the Supreme Court held that "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.' " See Twombly at 570. According to Ashcroft, "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully." Determining whether the allegations in a complaint are "plausible" is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." See Ashcroft at 1949 – 1950. The only "speculative" pleading submitted in this action is the Defendants' motion to dismiss which "speculates" that the facts pled by the Plaintiff are "implausible." Despite of the fact that various and specific factual allegations are leveled against specific Defendants, none of them have submitted a certification or affidavit denying one single allegation.

In Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 165 – 168 (1993) the Supreme Court held that a federal court may not apply a "heightened pleading standard" – more stringent than the usual pleading requirements of F.R.C.P. 8(a) in civil rights cases alleging municipal liability under § 1983. This is still the law of the land (and must be applied to the matter before the Court)

because the analysis in Ashcroft (a 5 – 4 decision) can only be applied to Bivins Actions against the Federal Government. The Supreme Court in Leatherman derived the rule of law which must be applied to this case based on a two part rationale. First, a heightened standard cannot be justified on the ground that a more relaxed pleading standard would eviscerate municipalities' immunity from suit by subjecting them to expensive and time-consuming discovery in every § 1983 case. Municipalities, although free from respondeat superior liability under § 1983 do not enjoy absolute or qualified immunity from § 1983 suits. Second, it is not possible to square the heightened standard applied in this case with the liberal system of "notice pleading" set up by F.R.C.P. 8(a)(2) requires that a complaint include only "a short and plain statement of the claim showing that the pleader is entitled to relief." And while F.R.C.P. 9(b) requires greater particularity in pleading certain actions, it does not include among the enumerated actions any reference to complaints alleging municipal liability under § 1983.

The infirmities in the Defendants' Ashcroft based argument do not end there. Ashcroft was a Bivins action brought on the grounds of "discrimination." The Plaintiff's complaint is, in part, a §1983 Claim brought under the First, Fifth, Eighth and

Fourteenth Amendments and State Law.  In fact, The Supreme Court in Ashcroft made it clear that "the factors necessary to establish a [Constitutional] violation will vary with the constitutional provision at issue. See Ashcroft at 1948. Also, in Ashcroft, the Court cautioned that the plaintiff was suing the "highest level of the federal law enforcement hierarchy" See id at 1943. This is not the case here. Additionally, the individual defendants in this case were not urgently reacting in the immediate aftermath of a terrorist attack and national emergency.

**A.) THE PLAINTIFF'S COMPLAINT PLEADS SPECIFIC FACTS WHICH ALLEGE THE VIOLATION OF RIGHTS GUARANTEED TO HER UNDER THE CONSTITUTIONS OF THE UNITED STATES OF AMERICA AND THE STATE OF NEW JERSEY.**

§1983 basically seeks to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide related relief. Richardson v. McKnight, 521 U.S. 399 (1997). To state a claim for relief under §1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law.

See Brimage v. Hayman, 2006 WL 3535282 (D.N.J.)[2] citing West v. Atkins, 487 U.S. 42, 48 (1988).

The general facts alleged in the Plaintiff's amended complaint undoubtedly set forth a *prima facia* cause of action. A state that takes a person into its custody and holds him there against his will has a corresponding duty under the *Federal Constitution's Eighth Amendment* to assume some responsibility for his safety and general well-being. To that end, when the state by the affirmative exercise of its power so restrains individuals' liberty that the individuals are rendered unable to care for themselves, and the state at the same time fails to provide for the individuals' basic human needs--such as food, clothing, shelter, medical care, and reasonable safety--the state transgresses the substantive limits on state action set by the Eighth Amendment. See Helling v. McKinney, 509 U.S. 25, 32 (1993) In the substantive due process analysis, it is the State's affirmative act of restraining the individual's freedom to act on his own behalf – through incarceration, institutionalization, or other similar restraint of personal liberty–which is the "deprivation of liberty" which triggers the protections of the Due Process Clause as opposed to its failure to act to protect his liberty interests against harms inflicted

---

[2] A Copy of which is attached as (**00008 – 00011**)

by other means. DeShaney v. Winnebago County Dept. of Social Services, 489 U.S. 189, 200 (1989). It is by virtue of same that the Supreme Court recognizes a "special relationship" between penal institutions and the inmates remanded to their care.

The Plaintiff's complaint is rooted in the Constitution and Laws of the United States.  More specifically, the Plaintiff alleges violations of her right to petition the government for redress, to exercise free speech guaranteed to her by the First Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment of the United States Constitution, and Article I, Paragraph XVII of the Constitution of the State of New Jersey. The Plaintiff has pled specific facts which allege that under color of law, the Defendants retaliated against her for exercising these rights. The Eighth Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment of the United States Constitution and Article I, Paragraph XII of the Constitution of the State of New Jersey guarantees to all persons, freedom from the infliction of cruel and unusual punishment. The Plaintiff has pled specific facts which allege that under color of law, the Defendants deprived her of that right. The Fifth Amendment of the United States Constitution, as incorporated by the Fourteenth Amendment of the United States Constitution and Article I, Paragraph I of the Constitution of

the State of New Jersey guarantees to all persons, freedom from being deprived of personal property and /or liberty without due process of law. The Plaintiff has pled specific facts which allege that under color of law, the Defendants deprived her of that right.

In light of the foregoing, the Plaintiffs' complaint which the Defendants have not even answered yet pleads cognizable causes of action in this jurisdiction and in the form and manner set forth in the Federal Rules of Civil Procedure. Therefore, the Defendants' motion must be denied.

### i.) PLAINTIFF'S FAILURE TO PROTECT / STATE – CREATED DANGER CLAIMS AGAINST THE DEFENDANTS.

Liability under §1983 for a violation of Due Process rights can also be established where a government actor affirmatively puts a person in a position of danger that he or she would not have been but for the government action and injury results. See Kneipp v. Tedder, 95 F. 3d 1199 (3rd Cir. 1996). The United States Supreme Court has long noted that the right to personal security constitutes a "historic liberty interest" protected substantively by the Due Process Clause and that right is not extinguished by lawful confinement, even for penal purposes. Youngberg v. Romeo, 457 U.S. 307, 315–316 (1982).

Generally, the Due Process Clause does not impose an affirmative duty upon the state to protect citizens from the acts of private individuals. However, the Third Circuit has explicitly recognized two exceptions to this general rule. First, the state has a duty to protect or care for individuals when a "special relationship" exists. It is without question that a special relationship existed between the Plaintiff and the Defendants. In fact, every inmate in a New Jersey County Correctional Facility has the right to be protected by correctional facility staff from personal abuse, corporal punishment, personal injury, disease, property damage, and harassment. See N.J.A.C. 10A:31 – 14.2.

Second, the state has a duty when a "state-created danger" is involved. See Sanford v. Stiles, 456 F. 3rd 298, 303 – 304 (3rd Cir. 2006). In Mark v. Borough of Hatboro, 51 F. 3d 1137, 1152 (3rd Cir. 1995) the Court set forth a four part test to hold a state actor liable which consists of: (1)  the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted in willful disregard for the safety of the Plaintiff; (3) there existed some relationship between the State and the Plaintiff and (4)the state actors used their authority to create an opportunity that otherwise would not have existed for the

third party's crime to occur. The Plaintiff's complaint contains specific facts which satisfy all four prongs of the "<u>Mark</u> test." The Plaintiff further submits that given an opportunity to engage in meaningful discovery, she can prove these allegations beyond what she already has after utilizing interrogatories, document production, depositions and expert medical reports that by a preponderance of the evidence.

Third, the Supreme Court imposes constitutional liability upon prison officials under the Eight Amendment for injuries suffered by one prisoner at the hands of another. The rational rests upon the theory that the officials have "stripped them of virtually every means of self – protection and foreclosed their access to outside aid" and, by virtue of same, "are not free to let the state of nature take its course." Liability attached for inmate – on – inmate violence attaches when only *two* (2) requirements are met. First, the deprivation alleged must be, objectively "show that he [or she] is incarcerated under conditions posing a substantial risk of serious harm." Second, the inmate must show that the prison official acted with a deliberately indifferent state of mind. <u>Farmer v. Brennan</u>, 511 U.S. 825, 833 – 835 (1994) Deliberate indifference exists when the inference can be drawn that the prison official is aware of and disregards an excessive risk to inmate health and safety.

Farmer at 837 (1994) To affix liability to a supervisor there must be a showing that he had actual or constructive knowledge of the misconduct and that his failure to take action had causal connection to the constitutional violation. See Schneider v. Simonini, 314 N.J.Super. 583, 595, (App. Div. 1998). The Plaintiff has pled (and the Defendants have not denied) that, at the very least, Officer Murray had first hand advanced knowledge that Inmate Vahaly had intensions of inflicting cruel and unusual punishment upon the Plaintiff on the day of the alleged injury. Neither Officer Murray or anyone else up her chain of command all the way up to the Sheriff did anything to prevent that harm from occurring --- which it ultimately did. Beyond that, the Plaintiff is entitled to full discovery to determine what else the Defendants knew, when they knew it and what, if anything, they did not only to prevent it, but to minimize the cruelty of aftermath.

### ii.)   PLAINTIFF'S RETALIATION CLAIMS.

The Defendant fall just shy of asking the Court for a "pat on the back" for accepting the various grievances filed by the Plaintiff during her period of incarceration. They seem to miss the point however that the Plaintiff's complaint is not rooted in the fact that she was denied the opportunity to petition the government for redress of grievances, but rather it is rooted in

the fact that the government retaliated against her for exercising that right.

To proceed with a retaliation claim, a Plaintiff must allege facts showing that (1) she engaged in constitutionally protected activity; (2) she suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising her Constitutional Rights and (3) the protected activity was a substantial motivating factor in the State actor's decision to take adverse action. See Rauser v. Horn, 241 F.3d 330 (3rd Cir. 2001). Plaintiff's complaint has pled facts constituting a retaliation claim. Participating in the prison grievance process is not only a prerequisite under the Prison Litigation Reform Act (42 USCS § 1997e) to brining suit (in some instances), it is also a venue of Due Process and Equal Protection in addition to a means of petitioning the government for redress of grievances – all of which are Constitutionally protected activities under the First and Fourteenth Amendments of the United States Constitution as well as Article I, Paragraph XVII of the Constitution of the State of New Jersey. Additionally, utilizing the prison healthcare system is also constitutionally protected activity.

As a result of the Plaintiff engaging in the aforementioned protected activities jointly and severally, the Defendants caused her to suffer, among other things, a deprivation of access to medical care, a broken nose, a lacerated lip, sleep deprivation, personal humiliation and deprivation of liberty interest by confining her in a solitary confinement under the ruse of placing her in what they call "protective custody." These acts of retaliation jointly and severally would deter a person of ordinary firmness from exercising these Constitutional Rights. There is ample evidence to demonstrate that the Plaintiff's exercise of these rights was a substantial motivating factor in the State actor's decision to take adverse action against her. This general tenor of the Defendants' moving papers evidences that the Defendants are not even shy about this. In light of the foregoing, the Plaintiff has alleged facts sufficient to permit the Plaintiff's claims to proceed past a pre – answer motion to dismiss.

### iii.)   PLAINTIFF'S CRUEL AND UNUSUAL CLAIMS.

#### a. THE DISCIPLINARY DETENTION AND SEXUAL HUMILIATION AND DEGREGATION.

The Defendants claim they placed the Plaintiff in "protective custody" from on or about July 23, 2007 thru August 3, 2007 "for her own protection to avoid retaliation since she

was agitating others." **(00002)** The Plaintiff (who, a the relevant time, was recovering from a broken nose and lacerated lip as well as the aggravated injuries to her pre - existing injuries to her back and neck) contends that the Defendants placed her in disciplinary detention as, among other things a retaliatory measure. An inmate may be placed in Protective Custody only with the approval of the adult county correctional facility Administrator or designee. N.J.A.C. 10A:31-18.1 The adult county correctional facility's Classification Committee shall review involuntary Protective Custody placements within seven days. At the involuntary Protective Custody review the inmate shall be given the opportunity to appear personally before the Classification Committee. The Classification Committee shall provide the inmate with a written notice of the committee's decision and a summary of the evidence relied upon. N.J.A.C. 10A:31-18.2 Any inmate who is not in a Protective Custody status shall be prohibited from entering the Protective Custody area at any time. All Protective Custody inmates shall be escorted by the number of custody staff members established by protective custody internal management procedures any time the inmate or inmates leave the Protective Custody area. All inmates in Protective Custody shall be searched when entering and leaving the Protective Custody area. N.J.A.C. 10A:31-18.5. The writing, visiting and telephone privileges of inmates shall

not be suspended while the inmate is confined in Protective Custody. N.J.A.C. 10A:31-18.6.


Upon admission to the adult county correctional facility all inmates shall be required to shower and shall be permitted to shower daily thereafter. N.J.A.C. 10A:31 – 12.8(a). N.J.A.C. 10A:31 – 26.4 mandates that all adult county correctional facilities shall provide for both indoor and outdoor access to recreation opportunities and equipment areas *where all inmates, except those in disciplinary detention*,[emphasis added] shall be provided with the opportunity to participate in leisure time activities on a daily basis. Such leisure time activities may include, but are not limited to: (1.) *Watching television*; [emphasis added] (2) Listening to the radio; (3) Playing cards; and (4) Initiating and completing arts and crafts projects. In addition, inmates *shall be given the opportunity to participate in a minimum of one hour of physical exercise and recreation each day outside the living unit and if weather permits, recreation activities should be scheduled for out-of-doors* [emphasis added].


The Defendants admit in writing that while the Plaintiff was in "protective custody" they restricted her access to showers, sleep, telephones, televisions, freedom of movement

(they imposed essentially 24 hour lockdown status) and privacy. (**00001 – 00003**) Plaintiff's complaint and certification submitted with this brief alleges other retaliatory deprivation of rights guaranteed to her under the State and Federal Constitutions and the New Jersey Administrative Code governing county correctional facilities.


Security and visual observation checks are required to take place every 30 minutes in Disciplinary Detention. N.J.A.C. 10A:31 – 17.4 Unlike the regulations governing the mandatory observation checks in *disciplinary detention*, there are no such compulsory monitoring requirements for inmates placed in Protective Custody. Despite the Plaintiff's objections, the Defendants had her under 24 hour video surveillance requiring 24 hour illumination of her "protective custody" cell. The video surveillance was often monitored, if not observed, by male corrections officers while the Plaintiff was changing and going to the bathroom in the 24 hour illuminated cell. In Bacon v. Minner, 229 Fed.Appx. 96, 100, 2007 WL 1157138, 2 (3rd Cir. 2007),[3] our Third Circuit recognized that other circuits have held that the constitutional requirement of adequate shelter for

---

[3] A copy of which is attached as (**00012 – 00016**).

an inmate includes the provision of adequate lighting. See
Hoptowit v. Spellman, 753 F.2d 779, 783 (9th Cir.1985).


To put the Plaintiff's sleep deprivation allegations into
their proper context, the United States Supreme Court recognized
that the deprivation of sleep is a form of torture Ashcraft v.
State of Tenn., 322 U.S. 143, 151 (1944). Lighting shone into an
inmate's cell 24 hours a day, constantly illuminating it, having
no way for an inmate to tell night from day, caused grave
sleeping problems and other mental and psychological problems
constitutes a sufficient claim of cruel and unusual punishment.
Keenan v. Hall, 83 F.3d 1083, 1091 (9th Cir. 1996) Not only are
all these elements present in the Plaintiffs case, she has was
subjected to punishment which was even more cruel and unusual
punishment.

N.J.A.C. 10A:31 - 8.13 mandates that observation through
electronic surveillance systems may be used to observe **special
risk** [emphasis added] inmates and to observe inmates during
movement and other activities and only when approved by the
adult county correctional facility Administrator. It further
mandates that electronic surveillance shall not substitute for
regular contact with staff members. Electronic surveillance
should be utilized in such a manner as to avoid interference

with the privacy of inmates, wherever possible. The Plaintiff submits that the 24 hour video surveillance of her cell is tantamount to a daily cell search. Recurrent cell searches conducted as "calculated harassment" may violate the Eighth Amendment against Cruel and Unusual Punishment when unrelated to legitimate prison needs. Hudson v. Palmer, 468 U.S. 517, 530 (1984), Prisoners' Legal Ass'n v. Roberson, 822 F.Supp. 185 (189) (D.N.J. 1993) and Scher v. Engelke, 943 F. 2d 921, 923 – 24 (8th Cir. 1991). The Plaintiff further submits that the Defendants placed her in disciplinary detention as, among other things, retaliation for exercising her Constitutional Rights. After all, if she was placed in "protective custody" "for her own protection to avoid retaliation since she was being accused of agitating others" what *special risks* could she possibly pose to herself and "others" (*i.e.* the corrections staff who found her "agitating") while she was locked in her cell for essentially 24 hours per day that would justify 24 hour illumination of her cell and 24 hour video monitoring of her most personal activities by male inmates and corrections officers? On a final note, the Defendants' reliance on Sandin v. Connor, 515 U.S. 472, 485 (1995) is misplaced. In Sandin, the Court found that the circumstances surrounding that inmate's solitary confinement were not actionable because they were consistent with the Sate of Hawaii's administrative law

governing inmate liberty interests which also comported with Due Process.  The holding in Sandin is in harmony with the Supreme Court's earlier decision in Paul v. Davis, 424 US 693, 696 (1976) which held that State law may define substantive property or liberty interests that are protected by the Due Process Clause. In this case, the Defendants' treatment of the Plaintiff while she was in "protective custody" clearly runs afoul with New Jersey's administrative laws governing a prisoner's liberty interests.

> b. DENIAL OF ACCESS TO ACCESS TO MEDICAL CARE / TREATMENT AND
> PRESCRIPTION AND OVER THE COUNTER MEDIATION FOR INJURIES
> SUSTAINED AS AN INMATE AND PRE — EXISTING INJURIES.

Under the New Jersey Administrative Code, every adult county correctional facility shall be responsible for essential medical, dental and health care services. See N.J.A.C. 10A:31-13.1. As part of that obligation, N.J.A.C. 10A:31-13.15 mandates every county adult correctional facility to provide 24 hour seven day per week emergency medical and dental care and written standard operating procedures to be established which shall include, but not be limited to, arrangements for the following: (1) On-site emergency first aid; (2) Emergency evacuation of the inmate from the adult county correctional facility; (3) Use of an emergency medical vehicle; (4) Use of one or more designated hospital emergency rooms or other appropriate health facilities;

and (5) An emergency on call physician or dental services when the emergency health facility is not located in a nearby community. Furthermore, facility personnel shall be trained in the use of emergency care procedures. This training shall include, but not be limited to: (1) Signs and symptoms of potential emergency situations; (2) types of action required for potential emergency situations; (3) Administration of first aid; (4) Method of obtaining emergency care; (5) Location of the facility's first aid kits; and (6) Transferring patient to appropriate medical provider.

Estelle v. Gamble, 429 U.S. 97, 102-105 (1976) has held for over 32 years that The Eight Amendment proscribes more than physically barbarous punishments. It embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency which are compatible with the evolving standards of decency that mark the progress of a maturing society and dispels the unnecessary and wanton infliction of pain. These elementary principles establish the government's obligation to provide medical care for those whom it is punishing by incarceration. An inmate must rely on prison authorities to treat his medical needs; if the authorities fail to do so, those needs will not be met. In the worst cases, such a failure may actually produce physical "torture or a lingering death and in less serious

cases, denial of medical care may result in pain and suffering which no one suggests would serve any penological purpose. The infliction of such unnecessary suffering is inconsistent with contemporary standards of decency as manifested in modern legislation which codifies[4] the common law view that "it is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." As such, deliberate indifference to serious medical needs of prisoners constitutes the "unnecessary and wanton infliction of pain" proscribed by the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed. Regardless of how evidenced, deliberate indifference to a prisoner's serious illness or injury states a cause of action under §1983.

In order to prevail on a claim of denial of medical care, a plaintiff must make a two – part showing: (1) the existence of a serious medical need; and (2) behavior on the part of the

---

[4] c.f. N.J.S.A. 30:7E – 5 which mandates that no inmate be denied medical care, treatment or prescription or non prescription drugs or medicine for want of financial resources and N.J.A.C. 10A:31 – 13.1.

defendant officials that constitutes deliberate indifference to that need. See Estelle at 106. Serious medical needs include those that have been diagnosed by a physician requiring treatment or are so obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if left untreated, would result in lifelong handicap or permanent loss. See Monmouth County Corr. Inst. Inmates v. Lanzaro, 834 F.2d 326, 347 (3rd Cir 1987). Factors to consider in this analysis include "the severity of medical problems, the potential for harm if medical care is denied or delayed and whether such harm actually resulted from the lack of medical attention." See Maldonado v. Terhune, 28 F. Supp. 2d 284, 289 (D.N.J. 1998). The Plaintiff's complaint alleges such facts with great clarity and plausibility. Plaintiff's exhibits **(00006 – 00007)** to this brief document the existence of the Plaintiff's condition as far back as July 16, 2007. This evidence must of course be coupled with the fact that any lay person would recognize the necessity for immediate and ongoing medical attention when someone's nose is broken, lip is cut to the extent that it required stitches, and they collide with a wall so hard, they hit their head and aggravate a pre – existing neck injury.

Against the backdrop of the fact that absolutely no discovery has been exchanged, the Plaintiff has various means of satisfying the "deliberate indifference" prong. For example, on May 20, 2009, the management of the Sussex County Jail were quoted in the New Jersey Herald as stating that providing inmates with Constitutionally mandated health care is "a runaway cost problem" and that they, including Sheriff Unitg himself, were "looking for ways to cut costs" pertaining to inmate health care. (**00004 – 00005**) They even make specific reference to the impact drunk drivers are having on their prison population. The Plaintiff submits that one of the ways which the Defendants are and have been "cutting costs" is illegally cutting inmate access to healthcare (quality and otherwise). She is entitled to full discovery as to what the administration's "cost cutting plans" were in 2007 and how they impacted their decisions to deny her access to her prescription and over the counter medications, timely follow up treatment for her broken nose, proper removal of her stitches, physical therapy for her neck and back and cell conditions. Indeed, withholding access to quality and meaningful health care for political and cost – cutting measures constitutes deliberate indifference under the circumstances. Furthermore, the Plaintiff is entitled to full discovery as to whether the Defendants were in compliance with the applicable administrative regulations contained in N.J.A.C. 10A:31 – 13.1,

*et seq.* governing her rights to health care as an inmate in the Defendants' correctional facility.

### c. The Broken Nose & Lacerated Lip.

Access to the medical staff has no meaning if the medical staff is not competent to deal with the prisoner's problems. The medical staff must be competent to examine prisoners and diagnose illnesses; in addition, the prison must provide an adequate system for responding to emergencies. Hoptowit v. Ray, 682 F.2d 1237 (9th Cir. 1982) The facts pled in the Plaintiff's complaint set forth a cause of action for these Constitutional violations on a myriad of levels. Some examples are the treatment and reasonable accommodations for the Plaintiff's very serious back and neck pre – existing injuries; the delay in and reluctance to render quality emergency medical care to the Plaintiff after her nose was broken; the damage to her lip as a result of the medical care rendered by the Defendants' prison nurse; and the medical staff's adherence to the Plaintiff's physician's care instructions for her back and neck injuries and for her nose and lip injuries. The Plaintiff submits that when an inmate sustains and / or aggravates a personal injury while in their custody, a county correctional facility's responsibility to provide an inmate with essential medical,

dental and health care services for those injuries extends to after her release from incrassation.

### B.) THE PLAINTIFF'S COMPLAINT PLEADS SPECIFIC FACTS WHICH ALLEGE VIOLATIONS OF 42 U.S.C. §1985(3)

42 U.S.C.A. § 1985(3) provides in pertinent part that "if two or more persons in any State or Territory conspire... for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws... in any case of conspiracy set forth in this section, if one or more persons engaged therein do, or cause to be done, any act in furtherance of the object of such conspiracy, whereby another is injured in his person or property, or deprived of having and exercising any right or privilege of a citizen of the United States, the party so injured or deprived may have an action for the recovery of damages occasioned by such injury or deprivation, against any one or more of the conspirators."

In actions under §1985(3), Plaintiff must prove the existence of a conspiracy. In doing so, plaintiff must show that two or more persons reached an understanding or agreement, either expressed or implied, to commit acts to violate

plaintiff's civil rights. While plaintiff must prove the existence of at least a tacit agreement to commit the unlawful acts, a conspiracy may be proven regardless of whether each conspirator knew of the details of the conspiracy or the part to be performed by the other co-conspirators. Perez v. Cucci, 725 F.Supp. 209, 247 (D.N.J.1989). The existence of such a conspiracy may be inferred from circumstances and need not be demonstrated to exist at a matter of express agreement. Hunt v. Weatherbee, 626 F. Supp. 1097 (D. Mass 1986). Where a private party is involved in a conspiracy with an official of the state acting under color of state law, the private party is also acting under color of state law even though he or she is not an official of the state. Tower v. Glover, 467 U.S. 914 (1984). The Plaintiff has pled sufficient and specific facts which allege the Defendants engaged in a conspiracy to (i.) prevent and / or hinder the constituted correctional and law enforcement authorities of the State of New Jersey from securing to the Defendant equal protection of the laws; and (ii.) deprive the Plaintiff of her civil rights which include, but are not limited to equal protection of the laws and equal privileges and immunities under the laws and thereby suffered a documented and permanent personal injury.

In this case, the Defendants' conspiratorial actions include, but are not limited to, conspiring with inmate Vahaly to cause the Plaintiff serious bodily injury by breaking her nose lacerating her lip and aggravating a pre – existing injury as retaliation for: (1) utilizing her Constitutional right to access inmate health care access; and (2) petitioning the government for grievance and prevailing in same. In addition to these events, the Defendants also conspired to delay and interfere with the Plaintiff's access to medical care and treatment prescribed and then illegally placed her in disciplinary detention where her rights were further violated. The United States Supreme Court has recognized that the denial and interference with medical care is actionable conduct under Federal Civil Rights Laws. See Estelle v. Gamble, 429 U.S. 97 (1976) see also Todaro v. Ward, 565 U.S. 97 (2nd Cir. 1977). The First Circuit has also recognized that medical care should not be denied because the condition of the inmate is due to an event occurring prior to the prisoner's arrival at prison. See Watson v. Caton, 984 F.2d 537 (1st Cir. 1993). In this case, the Defendants conspired to deny the Plaintiff access to her prescribed medication as well as physical treatment and therapy for her pre – existing neck and back injury in addition to creating cell confinement circumstances which caused her great pain by aggravating those pre – existing injuries.

### C.)   THE PLAINTIFF'S COMMON LAW CAUSES OF ACTION SPEAK FOR THEMSELVES.

The Plaintiff properly pled cognizable causes of action and sufficient facts to support them. Therefore, the Defendants' Motion to Dismiss the common law causes of actions set forth in the Plaintiff's complaint must be denied. As for the Defendant's "Tort Claim Notice" argument, the New Jersey Tort Claims Act the filing requirement of a Tort Claim Notice under state law does not apply to the Plaintiff's federal causes of action. See Fuchilla v. Layman, 210 N.J. Super. 574, 286 (App. Div. 1986). It does not apply to the Plaintiff's New Jersey Civil Rights causes of action[5] (N.J.S.A. 10:6 - 1, et seq.). See Owens v. Feigin, 194 N.J. 607, 609 (2008). With regard to the state common law causes of action, the Plaintiff substantially complied with the Notice of Claim requirements well within the filing deadlines. Velez v. City of Jersey City, 180 N.J. 284, 290 (2004) opined that the purposes of the notice of claim requirement of claim requirement in the Tort Claims Act are: (1) to allow the public entity time for administrative review, with the opportunity to settle meritorious claims prior to bringing suit; (2) to provide the public entity with prompt notification of a claim in order to adequately investigate the facts and

---

[5] Since the Defendants presented no argument with regard to the Plaintiff's causes of action under the New Jersey Civil Rights Act, the Plaintiff will not consume the Court's time presenting same at this time.

prepare a defense; (3) to afford the public entity a chance to correct the conditions or practices which gave right to the claim; and (4) to inform the public entity in advance as to the indebtedness or liability that it may be exposed to meet. The self contained nature and circumstances of a prison setting clearly places the Defendants on contemporaneous notice of the Plaintiff's common law claims as they happened. It is undisputed that this Plaintiff routinely filed administrative grievances during her 180 day stay placing the Defendants on notice of the various common law violations as they transpired. Finally, Plaintiff's counsel at the time (Bruce La Carrubba, Esq.) provided the Defendants with substantially compliant notice as required by <u>Velez</u> on July 16, 2007 (**000017**) and July 23, 2007 (**000001**)

## II.  THE DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY.

Local government units and supervisors are not liable under § 1983 solely on a theory of *respondeat superior.* <u>See Monell v. New York City Department of Social Services</u>*,* 436 U.S. 658, 690 – 91, 694 (1978) (holding that municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury"

complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir.2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of *respondeat superior.* However, personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir.1988). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293 – 96 (3d Cir.1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190 – 91 (3d Cir.1995).

Moreover, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent ." Monell, supra 436 U.S. at 690 "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." Kentucky v. Graham, 473 U.S. 159, 166 (1985).

Qualified immunity is 'an entitlement not to stand trial or face the other burdens of litigation.' " Saucier v. Katz, 533 U.S. 194, 200 (2001). Such immunity is appropriate where an

officer's conduct is "objectively reasonable in light of the constitutional rights affected." Odd v. Malone, 538 F.3d 202, 217 (3d Cir.2008). In other words, the ultimate inquiry is whether a hypothetical reasonable officer would have known she was violating the plaintiff's clearly established constitutional rights. Miller v. Clinton County, 544 F.3d 542, 547 (3d Cir.2008).

The Supreme Court in Saucier at 201 created a mandatory two prong analysis to determine whether a § 1983 defendant is entitled to qualified immunity. Under Saucier, courts were directed to determine: (1) whether " '[t]aken in the light most favorable to the party asserting the injury ... the facts alleged show the officer's conduct violated a constitutional right[,]' [and (2) ] 'whether the right was clearly established.' " Hubbard v. Taylor, 538 F.3d 229, 231 (3d Cir.2008) (quoting Saucier, 533 U.S. at 201). In considering the second prong of the Saucier test, the Third Circuit clarified that "[a] right is clearly established for the purposes of qualified immunity when its contours are 'sufficiently clear that a reasonable official would understand that what he is doing violates that right.' " Hubbard, 538 F.3d at 236 (quoting Williams v. Bitner, 455 F.3d 186, 191 (3d Cir.2006)). This standard " 'gives ample room for mistaken judgments by

protecting all but the plainly incompetent or those who knowingly violate the law.' " Hubbard at 236 (quoting Gilles v. Davis, 427 F.3d 197, 203 (3d Cir.2005)).


The Supreme Court has never recognized that qualified immunity is relevant to the existence of the plaintiff's cause of action. Instead, it has described it as a defense available to the official in question. Since qualified immunity is a defense, the burden of pleading it rests with the defendant. F.R.C.P. 8(c) (defendant must plead any "matter constituting an avoidance or affirmative defense"). It is for the official to claim that his conduct was justified by an objectively reasonable belief that it was lawful. There is no basis for imposing on the plaintiff an obligation to anticipate such a defense by stating in his complaint that the defendant acted in bad faith. Gomez v. Toledo, 446 U.S. 635, 640 (1980). Again, in Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit, 507 U.S. 163, 165 – 168 (1993), the Supreme Court held that a federal court may not apply a "heightened pleading standard" – more stringent than the usual pleading requirements of F.R.C.P. 8(a) in civil rights cases alleging municipal liability under § 1983.

The Defendants' pre – answer motion to dismiss the Plaintiff's complaint is based in part on the affirmative defense of qualified immunity. While this may be the case, it does not contain *any* evidence to support such a defense. It rests simply on unsworn assertions from Defense Counsel in a brief that: Sheriff Untig "did not participate in any of the alleged conduct" and the Plaintiff's complaint does not preemptively address a possible defense of immunity. Furthermore, qualified immunity does not relieve any prison official from his or her duty to provide humane conditions of confinement and ensure that inmates receive adequate food, clothing, shelter and medical care. This duty also obligates prison officials to "take reasonable measures to guarantee the safety of inmates." See <u>Farmer v. Brennan</u>, 511 U.S. 825, 832 (1994)

The Defenses' motion papers do not so much as mention in passing why the County or any of the other Defendants would be entitled to qualified immunity under the circumstances. This is because conspiring with an inmate to subject the Plaintiff to cruel and unusual punishment and then subjecting the Plaintiff to unconstitutional conditions of confinement for almost 180 days clearly overcomes <u>Saucier</u>'s two part test.

Notwithstanding the foregoing, in the case at bar, the Plaintiff's complaint makes sufficient allegations regarding the Defendants' failure to train, supervise and promulgate and execute lawful policies. Plaintiff's opposition papers also shine light on the Defendants' policy which disregards an excessive risk to the health and safety of inmates by denying them access to quality and timely healthcare for political and budgetary purposes. Due Process also entitles the Plaintiff to full discovery on the Defendants' compliance with the New Jersey Administrative Code requirements regarding the adherence to and promulgation of policies governing inmate rights.  If one or more of those policies (which the Defendants decline to submit with their moving papers) violate the law, the Plaintiff has the right to seek injunctive remedy against the Defendants and such relief is not barred by the qualified immunity defense.

In addition, the Plaintiff alleges that the Defendants personally engaged the actual events which let to the injuries that she sustained. Moreover, the Plaintiff is entitled to full discovery to investigate beyond what she already knows and pled as it pertains to the Defendants' direct and / or indirect involvement in the injuries which she sustained either from a "policy or custom" prospective as well as their active participation / acquiescence. Finally, the Plaintiff's complaint

seeks injunctive relief pursuant to 42 U.S.C. §1988 against the same Defendants seeking immunity. Immunity is not a defense to a party defending §1983 claims seeking injective relief. In fact, it is not a defense to a claim for attorney's fees and expert fees related to services rendered in furtherance of seeking injunctive relief on behalf of a plaintiff either. See Pulliam v. Allen, 466 U.S. 522, 541 – 545 (1984).

## CONCLUSION

The Russian novelist and former political prisoner Fyodor Dostoevsky is credited with the observation that "the degree of civilization in a society can be judged by entering its prisons." Much can be said about this adage over 121 years after his death not only by what the Defendants' did to the Plaintiffs while she was entrusted to their custody and care, but also how they approach the Plaintiff's instant action in their pre – answer motion to dismiss. In light of the foregoing, the Plaintiff respectfully requests that the Court deny the Defendants' Pre – answer Motion to Dismiss the Plaintiff's Complaint for failure to state a cause of action.

DATED:   July 6, 2010

Respectfully submitted,

By: _____
    DAMIANO M. FRACASSO,
    Attorney for the Plaintiff